BYE, Circuit Judge,
dissenting.
As the Court notes, an agency’s interpretation of its own regulation is not controlling when it is “plainly erroneous or inconsistent with the regulation.” Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (quotation omitted). In this case, the Federal Energy Regulatory Commission (FERC) adopted a rule in City of Longmont[6] and Carolina Power[7] without considering the consent provisions in the relevant regulation, 18 C.F.R. § 292.303(d), and without addressing the relevant and controlling provisions set forth in Order No. 69.[8] Because the rule adopted by FERC is inconsistent with both the controlling order and the controlling regulation, neither the district court nor our Court should defer to it. I therefore respectfully dissent from the decision to affirm the district court’s dismissal of the Sweekers’ complaint.
I
The Sweekers contend, and I agree, that § 292.303(d) gives a qualifying facility (QF) the discretion to choose whether to accept the avoided cost rate of a non-generating utility (Midland), or to bypass the non-generating utility and accept the avoided cost rate of the non-generating utility’s supplier (CIPCO). I believe this is the only reasonable interpretation of the regulation when read in conjunction with Order No. 69.
In Order No. 69, FERC specifically addressed the situation where the utility obligated to purchase excess energy from a QF was not only a non-generating utility, but was also an all-requirements utility bound by contract to purchase all of its energy from the same supplying utility. In such a situation, there is necessarily tension between the utility’s contractual obligations to its supplier, and the obligations imposed by federal law. This is exactly Midland’s situation. Midland is both a non-generating utility and an all-requirements utility bound by contract to purchase all of its energy from CIPCO. But the Public Utility Regulatory Policies Act of 1978, Pub.L. No. 95-617, 92 Stat. 3117 (PURPA), obligates Midland to purchase the excess energy generated by any QF in its coverage area, such as the Sweekers’ windmill. Midland therefore cannot comply with both federal law and its contract. If it purchases all of its energy from CIPCO and refuses to purchase energy from QFs, it is violating federal law. On the other hand, if Midland complies with federal law by purchasing excess energy from a QF in its coverage area, it is violating its contract with CIP-CO.
In Order No. 69, FERC adopted the consent requirement set forth in § 292.303(d) to address this issue. First, FERC indicated the obligations imposed by PURPA must take precedence over the *890 contractual obligations the non-generating utility may have to its supplier. See 45 Fed.Reg. 12,214 at 12,219 (explaining that if the contractual obligations of an “all-requirements rural electric cooperative[ ]” were permitted “to override the obligation to purchase from qualifying facilities, these contractual devices might be used to hinder the development of cogeneration and small power production”). As a consequence, the Commission stated the “mandate of PURPA to encourage cogeneration and small power production requires that obligations to purchase under this provision supersede contractual restrictions on a utility’s ability to obtain energy or capacity from a qualifying facility.” Id.
FERC next noted that a non-generating utility always has the option of seeking a waiver “if compliance with the purchase obligation would impose a special hardship on an all-requirements customer.” Id. Midland sought a waiver in this case, which if granted would have required CIP-CO to purchase the excess energy generated by QFs in Midland’s area. FERC, however, denied Midland’s request for a waiver, and therefore Midland remains obligated to purchase energy from the Sweckers’ windmill.
In the absence of a waiver, FERC offered another “out” to a non-generating all-requirements utility caught in this Catch 22 between its contractual obligations to its supplier and its federal obligation to a QF under PURPA. That is where § 292.303(d) comes into play. As explained by FERC in Order No. 69, § 292.303(d) creates a situation where a QF can essentially bypass a non-generating utility middleman (such as Midland), and transmit its energy straight through to the supplying utility (such as CIPCO). This “out” permits the non-generating utility caught in the middle to satisfy its contractual obligations to its supplier, but also satisfies the requirements of PURPA by giving a QF an alternative purchaser of its excess energy.
The key, however, is that § 292.303(d) expressly requires the QF to consent to this alternative arrangement that relieves the non-generating utility from its federally-imposed purchase obligations. The regulation specifically states “[i]f a qualifying facility agrees, an electric utility which would otherwise be obligated to purchase energy or capacity from such qualifying facility [i.e., Midland] may transmit the energy or capacity to any other electric utility [i.e., Midland’s supplier, CIPCO].” 18 C.F.R. § 292.303(d) (emphasis added). If such a transfer takes place, the regulation goes on to state that the “electric utility to which such energy or capacity is transmitted [i.e., CIPCO] shall purchase such energy or capacity under this subpart as if the qualifying facility were supplying energy or capacity directly to such electric utility.” Id.
There is no dispute that the Sweckers never consented to CIPCO purchasing their windmill’s excess energy, and thus Midland still retains the obligation to purchase the Sweckers’ excess energy pursuant to PURPA. Midland contends however, that irrespective of whether it retains the purchase obligation, or the purchase obligation has transferred to CIPCO, the avoided cost rate to use when paying the Sweckers is always CIPCO’s avoided cost rate. In other words, the Sweckers must accept CIPCO’s avoided cost rate if CIP-CO becomes the purchaser, but the Sweck-ers must also accept CIPCO’s avoided cost rate if Midland remains the purchaser.
Midland’s position is inconsistent with Order No. 69 and § 292.303(d), and thus so is the Court’s decision which adopts Midland’s position. In Order No. 69, when explaining that the purchase obligation remains with the non-generating utility if a *891 QF does not consent to the pass-through transmission to the supplying utility, FERC expressly gives examples where the QF may choose between the supplier’s (i.e., CIPCO’s) avoided cost rate or the non-generating utility’s (i.e., Midland’s) avoided cost rate. If, as Midland contends, the supplier’s avoided cost rate is always applicable, there would have been no need for FERC to discuss situations where a QF might choose one over the other.
Order No. 69 expressly states: “There are several circumstances in which a qualifying facility might desire that the electric utility with which it is interconnected [i.e., Midland] not be the purchaser of the qualifying facility’s energy and capacity, but would prefer instead that an electric utility with which the purchasing utility is interconnected [i.e., CIPCO] make such a purchase.” 45 Fed Reg. 12,214 at 12,219. The Commission then sets forth an example where a non-generating utility’s (Midland’s) avoided cost rate may actually be lower than the supplying utility’s (CIP-CO’s) avoided cost rate, such that it would be beneficial to the QF to consent to transmission directly to the supplier:
If, for example, the purchasing utility is a non-generating utility, its avoided costs will be the price of bulk purchased power ordinarily based on the average embedded cost of capacity and average energy cost on its supplying utility’s system.[9] As a result, the rate to the qualifying facility would be based on those average costs. If, however, the qualifying facility’s output were purchased by the supplying utility, its output ordinarily will replace the highest cost energy on the supplying utility’s system at that time, and its capacity might enable the supplying utility to avoid the addition of new capacity. Thus, the avoided costs of the supplying utility may he higher than the avoided cost of the non-generating utility.
Id. (emphasis added).
The necessary and unavoidable implication of FERC’s comparison between the supplying utility’s avoided cost rate (CIP-CO’s), and the non-generating utility’s avoided cost rate (Midland’s), is that both avoided cost rates can apply. And it is equally clear from the detailed discussion set forth in Order No. 69 that the issue of which utilities’ avoided cost rate applies is determined solely by the QF’s consent. If Midland’s position is correct, and an all-requirements non-generating utility was always entitled to use the supplying facility’s avoided cost rate, there would have been no reason for FERC to have compared the two utilities’ avoided cost rates in Order No. 69.
FERC goes on to state in Order No. 69 that “if the qualifying facility does not consent to transmission to another utility [CIPCO], the first utility [Midland] retains the purchase obligation.” Id. at 12,220. When read in conjunction with the earlier comparison of the avoided costs rates of the non-generating utility and the supplying utility, the unavoidable conclusion is that the non-generating utility’s (Midland’s) avoided cost rate applies when the QF does not consent to the pass-through transmission to the supplier.
That is precisely the situation involved here. The Sweckers never consented to the transmission of their windmill’s excess energy directly to CIPCO. As a consequence, Midland retains the purchase obligation. Therefore, it is Midland’s avoided cost rate, not CIPCO’s, which should be used when determining the amount to pay *892 the Sweckers. The district court thus erred in dismissing the Sweckers’ complaint.
As the Court itself notes, the .rule FERC adopted in City of Longmont and Carolina Power was without reference to the consent provisions of § 292.303(d), or without addressing the relevant provisions set forth in Order No. 69 discussed herein. Thus, to the extent FERC has created a contrary rule whereby the supplying utility’s avoided cost rate is always used when a non-generating utility has the initial purchase obligation, irrespective of whether or not a QF has consented to a pass-through transmission to a supplying utility, such a rule is not entitled to deference because it is plainly inconsistent with the controlling order and regulation.
II
I respectfully dissent.

. 39 FERC ¶ 61,301, 1987 WL 117113 (June 16, 1987).

. 48 FERC ¶ 61,101, 1989 WL 262068 (July 25, 1989).

.Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978, Order No. 69, 45 Fed.Reg. 12,-214 (Feb. 25, 1980).

. The amount of this cost (Midland’s "price of bulked purchased power”) is not clear in this record, but appears to be the correct amount to pay the Sweckers.